**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*Jacob K. Javits Federal Building*
*26 Federal Plaza, 38th floor*
*New York, New York 10278*

January 24, 2026

**BY ECF**

Honorable Victor Marrero
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

**Re: *United States v. Victor Montanez*, 24 Cr. 12 (VM)**

Dear Judge Marrero:

The defendant, Victor Montanez, is scheduled to be sentenced on January 30, 2026, following his guilty plea to possession of a firearm and ammunition after a felony conviction, in violation of 18 U.S.C. § 922(g)(1). The Government submits this letter in advance of sentencing and respectfully submits that a sentence within the advisory Guidelines range of 77 to 96 months' imprisonment is warranted and necessary under 18 U.S.C. § 3553(a).[1]

The charges against the defendant arise from his participation in a shooting on October 26, 2023 in which the defendant fired several gunshots at a group of males during a confrontation with the group.

## I. Offense Conduct

On October 26, 2023, at approximately 3:22 p.m., the defendant was involved in an altercation with a group of males on East 156th Street in the Bronx. (PSR ¶ 5). Security camera footage shows that, following an initial confrontation on the street, the defendant produced a firearm and discharged it while standing only a few feet from members of the group and also as they began to flee (captured in the still photos below). (PSR ¶ 5-6).

The footage further shows the defendant pursue the group as they ran into the Melrose Housing Development (also captured in the still photos below). During this pursuit, the defendant again discharged the firearm multiple times. (*Id.*). It was during this second sequence of gunfire, inside the housing development property that a round fired by the defendant struck an uninvolved bystander in the ear and cheek as the victim exited a vehicle. The victim survived his injuries. (*Id.*).

[1] As discussed further below, the Government agrees that the two-level enhancement for "serious bodily injury" pursuant to U.S.S.G. § 2A2.1(b)(1)(B) does not apply in this case.







(USAO_000364)


Defendant
begins to fire
at group


Defendant
continues to
fire at group

(USAO_000364)



(USAO_000350)

A witness described the shooter as wearing a beige jacket with black sleeves. (PSR ¶ 7). Shortly thereafter, officers observed Montanez in the vicinity wearing clothing consistent with that description. (*Id.*). When officers approached, Montanez ran but was apprehended a short distance away. A Kel-Tech Model P-11 9mm pistol, loaded with five live rounds, was recovered from his jacket pocket. (*Id.*).



(USAO_000001)



(USAO_000446)

Following his arrest, and after receiving Miranda warnings, Montanez provided a recorded statement in which he acknowledged possessing the firearm and stated that he had found it in the wheel well of a vehicle. (PSR ¶ 8). He denied discharging the firearm. (*Id.*).

## II. <u>Procedural Background</u>

On January 8, 2024, a grand jury sitting in this district returned a single-count Indictment charging Montanez with violating 18 U.S.C. § 922(g)(1). On July 21, 2025, Montanez pleaded guilty to that charge before the Honorable Katharine H. Parker, without a plea agreement. Your Honor accepted the defendant's guilty plea on July 31, 2025. (Dkt. 39). On December 19, 2025, the Probation Office issued its final Presentence Investigation Report. (Dkt. 42). The Probation Office calculated an advisory Guidelines range of 92 to 115 months' imprisonment, based on a Total Offense Level of 26 and a Criminal History Category of IV. The statutory maximum sentence is fifteen years' imprisonment. As discussed *infra*, the injury the victim suffered in this case does not meet the Guidelines' definition of "serious bodily injury" as set forth in U.S.S.G. § 1B1.1. Without this two-level enhancement, the defendant's Total Offense Level is 24 resulting in an advisory Guidelines range of 77 to 96 months' imprisonment.

## III. <u>Discussion</u>

### A. Applicable Law

The Guidelines still provide important guidance to the Court following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). Indeed,

although *Booker* held that the Guidelines are no longer mandatory, it also held that they remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. *Booker*, 543 U.S. at 264. As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," noting that that "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

After making the initial Guidelines calculation, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available;" (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants;" and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(1)–(7). *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

**B. The Section 3553(a) Factors Compel a Sentence Within the Stipulated Guidelines Range**

**1. Nature and Circumstances of the Offense (§ 3553(a)(1))**

This case is not a "mere" felon-in-possession offense. The defendant fired multiple gunshots in a residential Bronx neighborhood in the middle of the afternoon, chased fleeing individuals while armed, and shot an innocent bystander who had nothing to do with the dispute. That the victim survived does not diminish the seriousness of the conduct—it underscores how close this case came to being a homicide. The Guidelines properly account for this reality by cross-referencing the defendant's conduct to attempted murder, reflecting that this was a violent shooting, not passive possession.

**2. History and Characteristics of the Defendant (§ 3553(a)(1))**

The defendant's history and characteristics weigh strongly in favor of a sentence within the advisory Guidelines range because they reflect a persistent pattern of criminal conduct—

particularly violent and weapons-related conduct—that has continued despite repeated intervention by the criminal justice system.

The defendant's criminal history began in his adolescence and has extended into adulthood, demonstrating that his involvement with crime has not been isolated, youthful, or aberrational. As a teenager, he was adjudicated a youthful offender for a violent robbery involving the use of force in concert with others. (PSR ¶ 26). That early conviction is significant not merely because of the defendant's age at the time, but because it established a trajectory of conduct marked by violence and disregard for the safety of others—conduct that would recur repeatedly in the years that followed.

In the years immediately thereafter, the defendant accumulated additional youthful offender adjudications, including assault offenses involving intentional physical injury and property-related crimes, further confirming that his early criminal conduct was not a single lapse in judgment. (PSR ¶¶ 27-30). Instead, these convictions demonstrate a pattern of aggression, impulsiveness, and an inability or unwillingness to conform his behavior to the law even after prior periods of confinement.

As an adult, the defendant's criminal conduct escalated in seriousness rather than abated. He was convicted of a felony weapons offense that placed him on unmistakable notice that possession of weapons was both unlawful and dangerous. (PSR ¶ 31). That conviction is particularly relevant to the Court's assessment here—despite having been convicted and incarcerated for a felony weapons offense, the defendant later chose to arm himself again this time discharging a firearm in public and causing serious injury to an innocent bystander.

The defendant's subsequent conviction for burglary, which resulted in a significant sentence of imprisonment, further underscores this point. (PSR ¶ 37). That offense involved the illegal entry into a dwelling while armed with a firearm, reinforcing the defendant's continued association with weapons and violent criminal activity. The length of that sentence reflects the seriousness with which the state court viewed the defendant's conduct, yet even a substantial period of incarceration did not deter him from returning to criminal behavior upon release.

The defendant's continued convictions for assault and drug-related offenses following his release from state custody confirm that his criminal behavior persisted well into adulthood. (PSR ¶¶ 38-40). These were not technical or regulatory violations, but offenses involving harm to others and ongoing disregard for the law. Together, the defendant's convictions establish a consistent pattern: when confronted with stress, conflict, or opportunity, he has repeatedly resorted to criminal conduct, including violent behavior. Viewed in this context, the instant offense is not an anomaly. It represents the culmination of a long and troubling progression from robbery to assault, to felony weapons possession, to a public shooting that injured an innocent bystander. The Guidelines' assignment of a Criminal History Category IV accurately captures this history and the risk of recidivism it reflects.

For these reasons, the defendant's history and characteristics support a sentence within the advisory Guidelines range. Prior convictions, including lengthy terms of imprisonment, failed to deter the defendant or to prevent escalation. A substantial custodial sentence is therefore necessary

to reflect the defendant's demonstrated pattern of conduct and to account for the seriousness of the offense now before the Court.

**3. Need for the Sentence Imposed to Reflect the Seriousness of the Offense (§ 3553(a)(2)(A))**

A sentence within the advisory Guidelines range is necessary to reflect the seriousness of the offense, promote respect for the law, and provide just punishment.

The offense conduct in this case involved the active discharge of a firearm in a residential neighborhood during daylight hours. The defendant fired multiple rounds during a street confrontation and subsequent pursuit, conduct that created a substantial and foreseeable risk of serious injury or death to anyone in the vicinity. That risk materialized when a bystander—who was not involved in the underlying dispute—was struck by gunfire while exiting his car. Although the victim survived, the fact that the injuries were non-fatal does not diminish the gravity of the conduct or the danger it posed.

The defendant emphasizes that the individuals he was pursuing may have been some distance away at the moment he fired. (*See* Def. Letter, at 9). The security camera footage, however, tells a different story. The video shows while the defendant was discharging his firearm, he was only a few feet from uninvolved bystanders who happened to be nearby, one of whom was positioned directly in the line of fire. (*Supra*, p. 2). As reflected in the video evidence, the danger created by the defendant's conduct was not limited to the intended targets of his gunfire, but extended immediately and indiscriminately to others in close proximity.

Thus, the advisory Guidelines appropriately account for the seriousness of the defendant's conduct by cross-referencing the offense conduct to attempted murder, reflecting that the defendant's conduct went well beyond unlawful possession of a firearm and involved the use of a weapon in a manner capable of causing lethal harm. A sentence within the Guidelines range therefore aligns with the nature of the offense as it actually occurred, rather than treating it as a technical or attenuated firearms violation.

Imposing a sentence substantially below the Guidelines range would risk undervaluing the seriousness of firing a weapon in public under circumstances where innocent bystanders were exposed to immediate and grave danger. Such a result would be difficult to reconcile with the statutory directive that the sentence imposed provide just punishment and promote respect for the law.

**4. Need for the Sentence to Afford Adequate Deterrence and Protect the Public (§ 3553(a)(2)(B)–(C))**

A Guidelines sentence is also warranted to achieve both specific deterrence and protection of the public. The defendant's criminal history demonstrates that prior convictions and periods of incarceration have not deterred him from engaging in further criminal conduct. Despite having previously been convicted of serious offenses—including a felony weapons offense and a felony burglary resulting in a substantial term of imprisonment—the defendant again chose to arm himself

and engage in dangerous conduct. The instant offense represents an escalation from possession to active use of a firearm in public, underscoring the limited deterrent effect of earlier, less severe sanctions. In this context, a sentence within the advisory Guidelines range is necessary to deter the defendant from future offenses. The record reflects that prior interactions with the criminal justice system, including lengthy custodial sentences, were insufficient to prevent recidivism. A substantial custodial sentence is therefore required to impress upon the defendant the seriousness of his conduct and the consequences of continued unlawful behavior involving firearms.

General deterrence likewise supports a Guidelines sentence. Firearm violence—particularly when it occurs in residential neighborhoods and results in injury to bystanders—has a profound impact on community safety and public confidence. A sentence that meaningfully reflects the seriousness of this conduct serves not only to deter the defendant, but also to deter others who might be inclined to carry or use firearms in similar circumstances.

Finally, the need to protect the public weighs heavily in favor of a Guidelines sentence. The defendant's history and the circumstances of the offense demonstrate a willingness to resort to violence and a disregard for the safety of others. A substantial term of imprisonment is necessary to reduce the risk of further harm to the community and to ensure that the sentence imposed is sufficient to protect the public from future crimes by the defendant.

## IV. **Response to the Defendant's Sentencing Submission**

The Government does not dispute—and does not minimize—the seriousness of the defendant's medical challenges or the hardship he has endured during his incarceration. The record shows that the defendant has faced a life-threatening illness, prolonged hospitalization, and significant physical and emotional strain. Those circumstances are real, and they are appropriately considered by the Court in fashioning a sentence that is individualized and just.

At the same time, the existence of serious medical hardship does not, standing alone, resolve the sentencing inquiry. The Court must weigh those considerations alongside the nature of the offense, the harm caused, the defendant's history, and the need to protect the public and promote respect for the law. When those factors are considered together, the Government respectfully submits that a sentence within the advisory Guidelines range remains warranted, even while fully accounting for the defendant's medical condition.

The Presentence Report reflects that when the defendant's condition was diagnosed, he received extensive and ultimately effective medical treatment, including prolonged hospitalization, aggressive chemotherapy, and specialized care that resulted in his cancer entering remission. While the defendant understandably focuses on the hardship of his confinement, the medical care he received was substantial and lifesaving, and it demonstrates that his condition was treated with seriousness and success rather than neglect. The Government agrees that defendant's illness may reasonably inform where within the Guidelines range a sentence should fall, however, it does not warrant the extraordinary reduction the defense seeks—particularly in a case involving a violent public shooting that seriously injured an innocent bystander.

## V. The Cross Reference to Attempted Murder Applies Under U.S.S.G. § 2K2.1

The defendant raises objections to the advisory Guidelines calculation, disputing the application of the cross-reference to attempted murder under U.S.S.G. §§ 2K2.1(c) and 2A2.1(a)(2), as well as the two-level enhancement under § 2A2.1(b)(1)(B) based on the victim's injuries.

Section 2K2.1(c)(1)(A) directs the Court to apply the guideline for another offense "[i]f the defendant used or possessed any firearm or ammunition cited in the offense of conviction in connection with the commission or attempted commission of another offense," "if the resulting offense level is greater." U.S.S.G. § 2K2.1(c)(1)(A). Where, as here, the other offense is attempted murder, § 2A2.1 supplies the applicable guideline. Section 2A2.1(a)(2) provides a base offense level of 27 for attempted murder other than first-degree murder. The question before the Court is therefore whether the defendant's conduct supports a finding—by a preponderance of the evidence—that he acted with the specific intent to kill. It does.

While it is true that attempted murder requires proof of specific intent to kill, the Second Circuit has made clear that intent may be inferred from the defendant's actions and the surrounding circumstances. *United States v. Kwong*, 14 F.3d 189, 194 (2d Cir. 1994) ("By necessity, intent must usually be proven by circumstantial evidence."); *Fernandez v. Dufrain*, 11 F. Supp. 2d 407, 417 (S.D.N.Y. 1998) ("The fact of specific intent to murder, however, can be inferred from '[t]he nature of defendant's acts and the surrounding circumstances.") (internal citations and quotations omitted)).

The defendant's opposition to the attempted-murder cross-reference rests in significant part on a mischaracterization of the offense conduct. The defendant claims that his conduct was merely reckless because, at the time he fired, the individuals he was pursuing were approximately 150 feet away. That framing isolates one moment in the encounter while ignoring the sequence of events captured on the security camera video and reflected in the Presentence Report. To the contrary, the evidence shows that the defendant did not begin firing at distant targets from a place of relative separation. Rather, after an initial confrontation on the street, the defendant produced a firearm and began firing while standing only feet away from the group of teenagers as they started to flee. (*See infra* at p. 3). The gunfire was not limited to a single impulsive discharge. Instead, after the group ran from the initial confrontation, the defendant chased them into the housing development and continued firing his weapon. This sequence matters. The defendant's conduct was not confined to shots fired at individuals already far removed from him. It began at close range, escalated into a pursuit, and involved repeated discharges of a firearm as the defendant actively chased fleeing individuals rather than disengaging. As the Second Circuit has made clear, a defendant's decision to continue firing after targets flee—particularly during a pursuit—supports an inference of intent to kill, not mere recklessness. *United States v. Scott*, 2025 WL 3537339, at *2 (2d Cir. Dec. 10, 2025) (summary order).

By focusing narrowly on estimated distances at select moments, the defendant attempts to reframe the conduct as indiscriminate risk-taking rather than purposeful violence. But the Guidelines ask whether the defendant used the firearm "in connection with" the attempted commission of another offense and whether the evidence supports a finding of specific intent to

kill. U.S.S.G. 2K2.1(c)(1). Viewed in full context, the defendant's actions—initiating gunfire at close proximity, pursuing fleeing individuals, and continuing to fire—are inconsistent with the notion of mere recklessness and instead support the application of the attempted-murder cross-reference.

Accordingly, the defendant's distance-based characterization does not undermine the Probation Office's application of U.S.S.G. § 2K2.1(c) and § 2A2.1(a)(2). It is the sequence, proximity, and persistence of the gunfire—not a selective measurement taken after the pursuit was underway—that governs the intent analysis.

The Second Circuit's recent decisions in *Scott*, and *United States v. Green*, 2023 WL 7180645 (2d Cir. Nov. 1, 2023) (summary order), confirm that the cross-reference applies in circumstances materially indistinguishable from—and in some respects less aggravated than—those present here.

In *Scott*, the defendant brandished a firearm during a street argument, fired, pursued fleeing individuals, and fired additional shots, striking one victim. 2025 WL 3537339, at *2-*3. The Second Circuit affirmed the application of the attempted-murder guideline, reiterating that "[a]n attempt to commit murder requires a specific intent to kill," but holding that the district court properly found such intent where the defendant "pulled out a gun and began shooting," "pursued the Victim when the Victim ran to escape," and "fired the gun at the Victim at least two additional times." *Id.* at *2. The Court emphasized that once the initial targets fled, the defendant "had the opportunity to leave the scene" but instead continued the pursuit and gunfire, supporting an inference of intent to kill. *Id.* at *3.

Similarly, in *Green*, the Second Circuit upheld application of the attempted-murder cross-reference even though no one was struck by gunfire. 2023 WL 7180645. There, the defendant fired multiple shots from a moving vehicle toward the victim. The Court affirmed the district court's finding that the ammunition was possessed in connection with attempted murder, noting there was "no other reasonable explanation for the shooting," rejecting the claim that the shots were merely warnings, and observing that the defendant fired rounds "at a level that's roughly equivalent to the torso of a human being standing on the sidewalk rather than up in the air." *Id.* at *2. The Court reiterated that "a court is permitted to use circumstantial evidence to infer a specific intent to kill." *Id.* The relevance to this case is clear. If intent to kill may be found where a defendant fires multiple shots toward a victim and no one is hit, then it follows *a fortiori* that intent to kill may be inferred where, as here, the defendant fired multiple rounds during and after a pursuit, while in close proximity to others, and a bullet in fact struck an innocent bystander. The Guidelines do not require that the intended target be hit, or that anyone be killed, to support the attempted-murder cross-reference. As *Green* confirms, what matters is whether the defendant's conduct, viewed in context, supports a finding that he acted with specific intent to kill.

Taken together, *Scott* and *Green* make clear that where a defendant fires a firearm during a confrontation, continues firing while pursuing others, and does so in a manner capable of causing lethal harm, a sentencing court may properly find—by a preponderance of the evidence—that the defendant acted with specific intent to kill. The cross-reference to U.S.S.G. § 2A2.1(a)(2) therefore properly applies.

## VI. The Two-Level Enhancement for Serious Bodily Injury Under U.S.S.G. § 2A2.1(b)(1)(B)

The Government agrees that the injury sustained by the victim does not meet the Guidelines' technical definition of "serious bodily injury" as set forth in U.S.S.G. § 1B1.1, Application Note 1L. That provision defines "serious bodily injury" as an injury involving "extreme physical pain," "protracted impairment of a function of a bodily member, organ, or mental faculty," or one "requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." The record does not establish that the victim's gunshot wounds to the ear and cheek—which police reports characterized as "superficial"—resulted in protracted impairment or required surgical intervention or prolonged hospitalization within the meaning of that definition. (USAO_000406). Accordingly, the Government does not dispute that the victim's injuries may be more appropriately characterized as "bodily injury," rather than "serious bodily injury," under the Guidelines' definitional framework.

## VII. Conclusion

For the reasons set forth above, the Government respectfully submits that a sentence within the advisory Guidelines range of 77 to 96 months' imprisonment is appropriate and warranted in this case.

Respectfully submitted,

JAY CLAYTON
United States Attorney

By: ______________________
Dominic A. Gentile
Assistant United States Attorney
(212) 637-2567

cc: Martin Cohen, Esq. (Via ECF)